*735 OPINION OF THE COURT
Jeffrey S. Sunshine, J.
The defendant father herein moves by way of motion in limine for an order permitting the entry of testimony of the minor six-year-old child in the instant divorce action. The father proposes to question the child as to acts which she observed or did not observe regarding the mother’s claim of cruel and inhuman treatment and to testify on the issue of custody. Further, the defendant father opposes the plaintiff mother’s request for a divorce.
Defendant’s counsel avers that there is a constitutional right for the child to be heard in the instant proceeding in that “a child is not the family pet * * * A child has the right to be heard and to have his or her preference considered.” Defendant further argues that the child cannot be heard through the child’s lawyer or the child’s Law Guardian stating that the child’s Law Guardian is an advocate and not a witness. The defendant assumes for the purposes of this motion in limine that the child is sui juris and is mature enough to testify from the stand to give his or her preference.[1] (See Prince, Richardson on Evidence § 6-106 [Farrell 11th ed]; see also Wheeler v United States, 159 US 523, 524-525 [1895].) Defendant’s position is that the denial of a child’s right to be heard under the alleged “best interest” test is “abominable and incorrect.”
Plaintiff mother and Law Guardian on behalf of the child each opposes calling of the child to the witness stand to testify on the issue of fault. As part of her argument to prevent the child from testifying, plaintiff states that on December 14, 1998, at a hearing in the Circuit Court of the Ninth Judicial Circuit in and for Osceola County, Florida, the defendant was accused of having perpetrated an incident of domestic violence against the plaintiff. The domestic violence hearing was attended by plaintiff with her attorney and defendant with his attorney.
After hearing all of the testimony and evidence the Florida court found that the plaintiff was “a victim of domestic violence and/or has reasonable cause to believe that he/she is in imminent danger of becoming a victim of domestic violence by Respondent.”[2] The Florida court granted temporary custody of the child to the plaintiff, visitation to defendant and issued an *736 order of protection against the defendant which remains in effect until this very day. That order, dated December 29, 1998, provides inter alia, “No Contact. Unless otherwise provided herein, Respondent shall have no contact with Petitioner. Respondent shall not directly or indirectly contact Petitioner in person, by mail, e-mail, fax, telephone, through another person, or in any other manner.”
Similarly, the Law Guardian opposes the application. The Law Guardian revealed to the court that the child who is six years old has since the age of four been interviewed, re-interviewed, analyzed, etc., and is extremely cautious as to where to place her trust in the court system. The Law Guardian states: “To determine her competency to testify she would have to be questioned by the Court, which I believe would be traumatic for her” and “my client has been betrayed, inadvertently, by the Family Court system and has lost her faith in the Court’s ability in keeping confidential, what she has reported in the past.”
It has been revealed to the court that a transcript of a tape recording of an in camera proceeding in a prior proceeding before a referee in Family Court (which was discontinued by the father in Family Court) was sent to the father at his request and the father, incredibly, discussed the content of the in camera interview with the child. This incident has seriously threatened the sanctity of an in camera interview. (See Matter of Ladd v Bellavia, 151 AD2d 1015 [4th Dept 1989]; see also McManus v McManus, 274 AD2d 378 [2d Dept 2000].)
The Law Guardian states that in a prior Family Court proceeding:
“statements that my client made to a forensic psychologist and an in camera interview, had been inadvertently given to the defendant/father. Unfortunately, the defendant father decided to let the child know that he was aware of what she said. The statements by the father to my client basically destroyed her belief in the confidentiality of the Court system, something that I have been working to restore.”
Defendant father is incorrect in his assertion that the Law Guardian in this matter is attempting to substitute his own judgment for that of the child or is not advocating the position that the child has expressed. In fact, the very reason a Law Guardian is appointed is to advocate for individuals who because of age or incapacity, cannot advocate for him or herself. *737 In some instances where it is clear that the child cannot communicate his or her own desires, or whose judgment is impaired by age or maturity, a guardian ad litem should be appointed pursuant to CPLR 1201. It is clear that the role of a Law Guardian in a custody matter is to represent his or her client to the best of the Law Guardian’s ability. The Second Department in outlining the tasks of the Law Guardian stated “[t]he attorney may act as a champion of the child’s best interest, as advocate for the child’s preferences, as investigator seeking truth on controverted issues, or may serve to recommend alternatives for the court’s consideration.” (Koppenhoefer v Koppenhoefer, 159 AD2d 113, 117 [2d Dept 1990].) It is the role of a Law Guardian to properly advocate the position of a child to a court in the presence of counsel for the parties and this court will not allow or accept a so-call “report” from an attorney representing the child in the instant matter. (See Ruckert v Riley, 282 AD2d 608, 609 [2d Dept 2001].) Even if the court were to determine that the Law Guardian was not acting consistent with his client’s express wishes, the Law Guardian’s position is relevant in the proceeding. (Carballeira v Shumway, 273 AD2d 753 [3d Dept 2000].)
The Appellate Division, Third Department, in Carballeira v Shumway (at 754-755), held
“the Family Court Act ‘establishes a system of law guardians for minors who often require the assistance of counsel to help protect their interest and to help them express their wishes to the court’ (Family Ct Act § 241 [emphasis supplied]). First and foremost, the Law Guardian is the attorney for the child (Family Ct Act § 242; see, Matter of Jamie EE., 249 AD2d 603) and must take an active role in the proceedings (see, id., at 605-606; Matter of Jamie TT., 191 AD2d 132, 137-138). In that role as attorney, the Law Guardian has the statutorily directed responsibility to represent the child’s wishes as well as to advocate the child’s best interest. Because the result desired by the child and the result that is in the child’s best interest may diverge, Law Guardians sometimes face a conflict in such advocacy.”
Citing Eschbach v Eschbach (56 NY2d 167, 173 [1982]) the Appellate Division, Third Department, went on to state, “ [i] t is helpful to a resolution of that conflict to note that the child’s preference is just one factor the trial court will consider.” (273 AD2d, at 755.)
*738 Here, in opposing the testimony on the issue of fault and custody, the Law Guardian is clearly enunciating his client’s preference is to not be interviewed. Furthermore, in this case, the child has already been subject to in camera interviews and multi-interviews by other parties. The Law Guardian believes that it would not be in the best interest of this six-year-old client to testify at a proceeding of this nature. The parties must not lose sight of the fact that while the child’s preference is something the court will consider on the issue of custody, it is not determinative on the issue. (Eschbach v Eschbach, supra, at 173.)
Defendant avers that there is no difference between the calling of a child as a witness on the grounds of his parents’ divorce action and calling a child as a witness to a collision at an intersection, crime, or as an independent witness in any civil or criminal proceeding. (See Jensen v Shady Pines, 32 AD2d 648 [1969]; Rittenhouse v Town of N. Hempstead, 11 AD2d 957 [1960]; People v Rose, 223 AD2d 607 [1996].) However, the defendant clearly is misguided by his attempts to equate the appearance of a child at other types of civil and/or criminal matters to that of the appearance of the child to testify in open court in his or her parents’ divorce action. A parents’ divorce is one of the most traumatic events that effects a child in his or her life. How parents handle and react to each other during that period of divorce has emotional impact upon that child for the rest of that child’s life. Quite frankly, how children are treated in their own parents’ divorce may very well reflect upon their own ability to deal with conflict and personal relationships throughout their lives.
Certainly, children may be frightened and/or concerned about having to testify and speak in front of others in civil or criminal litigation. However, requiring a child to take the witness stand to testify between one’s parents clearly is distinguishable from having a child testify as to that which he/she witnessed regarding an accident or a crime. Especially in a divorce proceeding, the likelihood is that the child will be asked to testify as to parental preference, i.e., regarding with whom the child wishes to reside or regarding facts and circumstances pertaining to the already traumatic events and circumstances which the child may have witnessed between the parents.
It has been well established in this jurisdiction that the appropriate method to conduct an interview with a child in a custody matter is an in camera interview. Due to the fact that the father obtained a copy of the minutes of the prior Family *739 Court in camera interview with the child, and because the child learned that the father was privy to what should have been a sealed record, in the instant matter this in camera interview may be particularly harmful or potentially dangerous. (See Matter of Ladd v Bellavia, supra, at 1015 [“We note with grave concern that the confidentiality of two in camera interviews with the child has been breached”].) This court must be sensitive to this.
In Matter of Lincoln v Lincoln (24 NY2d 270, 272 [1969]), the New York State Court of Appeals over 30 years ago held:
“It requires no great knowledge of child psychology to recognize that a child, already suffering from the trauma of a broken home, should not be placed in the position of having its relationship with either parent further jeopardized by having to publicly relate its difficulties with them or be required to openly choose between them. The trial court however, if it is to obtain a full understanding of the effect of parental differences on the child, as well as an honest expression of the child’s desires and attitudes, will in many cases need to interview the child. There can be no question that an interview in private will limit the psychological danger to the child and will also be far more informative and worthwhile than the traditional procedures of the adversary system — an examination of the child under oath in open court.” (See also, Rauschmeier v Rauschmeier, 237 AD2d 702 [3d Dept 1997] [it was not error not to include the participation of two litigants and their counsel in the Lincoln hearing].)
Notwithstanding that the Lincoln decision was rendered by the Court of Appeals, defendant believes that because the Lincoln decision was rendered over 30 years ago it should no longer be considered controlling law. Defendant cites Kapuscinski v Kapuscinski (75 AD2d 576 [2d Dept 1980]). In that case, the Appellate Division held that it was proper for the court to ascertain through testimony the wishes of a 14-year-old child on the issues of custody and divorce. The defendant argues that this court should not draw any distinction between a 6-year-old child and a 14-year-old child on a claim that to do so would be to discriminate based upon the child’s age.
This court finds that argument to be, at best, unpersuasive. Courts each day must distinguish between the capabilities and what is best for a 6 year old as opposed to the capabilities of *740 and what is best for a 14 or 16 year old. To not allow the court to distinguish between the best interest of a child as it relates to that child’s age would be to carry the torch of age discrimination to the absurd. If a parent cannot recognize that having a six year old testify in open court is fraught with the possibility of dangerous long-term effects on that child, then the court in its role as parens patriae will. Judges must also not lose their common sense and must clearly distinguish between the emotional impact of a 6 year old testifying and a 14 year old testifying.
The Appellate Division, Second Department, 10 years after Kapuscinski in Koppenhoefer v Koppenhoefer (159 AD2d 113, 116 [2d Dept 1990]), stated “it is well settled that to formulate a sound basis the Court should seek the expertise of other professionals.” The Court further stated (at 117):
“[t]he court should also ascertain the wishes of the children, particularly when, as here, the children are of a sufficient age to articulate their needs and preferences to the court [citations omitted]. While the express wishes of children are not controlling, they are entitled to great weight, particularly where their age and maturity would make their input particularly meaningful [citation omitted].”
The Court went on to state that the preferred practice in a custody/visitation case, in order to determine best interest, is to have an in camera interview with the child on the record in the presence of the Law Guardian. In the case at bar, independent forensic evaluations on consent have been conducted pursuant to 22 NYCRR 202.16 (f) (3), and as indicated above, an in camera interview has already been held of the child. After the court hears testimony from the independent neutral forensic evaluator as to the effect of a second in camera interview on a child of this age, given the history of the breach of this child’s confidentiality by the father obtaining the prior Family Court in camera interview with the child, this court will determine whether another in camera interview would serve a “useful purpose” (see Mascoli v Mascoli, 132 AD2d 653 [2d Dept 1987]) and whether the appointment of a guardian ad litem is necessary.
The defendant’s reliance on vague claims of constitutional deprivations of right to confrontation or right to due process are cited without authority and are wholly without merit. The defendant recites the Constitution of the United States and the Constitution of the State of New York as authority that the *741 child must have the right to be placed on the witness stand and that the child’s due process rights are violated by the child not being allowed to testify. While the child is a party to this litigation inasmuch as the child is effected by the proceeding as a whole, this child did not chose to litigate as a party in this matter. This child’s due process rights are well satisfied by the guidelines set forth by our Court of Appeals in Lincoln v Lincoln (supra). To equate the right to confrontation that a juvenile has in a criminal proceeding (see United States v Gault, 387 US 1 [1967]), with the “right” of a six-year-old child to take the stand to testify as to cruel and inhuman treatment or in defense to an act of cruel and inhuman treatment or to state this child’s preferences as to custody and/or visitation is inappropriate.
It is curious that the defendant disregards the fact that the issue of violence which he intends to confront by placing the child on the witness stand has already been dealt with by another court of concurrent jurisdiction which this court cannot ignore. In fact, this court by federal statute is mandated to recognize the final order of protection issued by the Florida court. 18 USC § 2265 (a) provides:
“[a]ny protection order issued that is consistent with subsection (b) of this section by the court of one State or Indian tribe (the issuing State or Indian tribe) shall be accorded full faith and credit by the court or another State or Indian tribe (the enforcing State or Indian tribe) and enforced as if it were the order of the enforcing State or tribe.”
Any attack on the order of protection which was issued in the State of Florida must be made in the State of Florida.
This court draws no distinction between the underlying requirements as enunciated by the Court of Appeals in Lincoln related to conducting in camera interviews on the issue of custody as opposed to the issue of fault. Here, they are intricately interwoven also complicated by the fact that issues of fault will impact what is the best interest of the child (see Eschbach v Eschbach, supra) as will the prior findings of domestic violence. (See Domestic Relations Law § 240 [3].)
Ultimately, this court also will determine if proposing that a six-year-old child be placed on the witness stand to testify as to issues of fault and custody is an indicia of whether that parent is acting in his/her own best interests or in the best interest of the child. That determination, though, can only be made after trial, after all the competent testimony has been elicited and must be left for a later day.
*742 Significantly, the Appellate Division in Pascuzzo v Pascuzzo (55 AD2d 947 [2d Dept 1997]) held that where trial court, in chambers, ascertains that testimony of the parties’ children would be on the issue of cruel and inhuman treatment in a case where defendant previously admitted certain acts of cruelty, trial court properly excluded children’s anticipated testimony as immaterial (id., at 948).
Therefore, the application in limine to allow the six-year-old child in the instant matter to testify on the fault portion and custody portion of the trial is denied. The court will hold in abeyance any determination as to whether or not it is appropriate for there to be an in camera interview and/or the appointment of a guardian ad litem after the court has had opportunity to receive the transcript of the prior in camera proceeding held before the referee in the Family Court and to hear testimony as to the capacities of this child and as to the possible effect of another in camera interview in this particular matter by the neutral forensic evaluator.

. Defendant concedes that if the court finds that the child is not sui juris that the testimony of the child shall not be taken.

. “Respondent” is defendant in case at bar.